UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

BRUCE E. KATZ, M.D., P.C d/b/a Juva Skin     :
and Laser Center, individually and on behalf of all   :
others similarly situated,     :
    :
                 *Plaintiff,*     :      20-cv-2897 (PAC)
    :
         *- against -*     :      **OPINION & ORDER**
    :
FOCUS FORWARD LLC,     :
    :
               *Defendant.*     :

-------------------------------------------------------------------X

     Defendant Focus Forward, LLC ("Defendant") moves under Federal Rule of Civil

Procedure 12(b)(6) to dismiss Plaintiff Bruce E. Katz, M.D., P.C. d/b/a Juva Skin and Laser

Center ("Plaintiff")'s complaint. The precise issue is whether a faxed invitation to participate in

a market research survey in exchange for money constitutes an "advertisement" under the

Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of

2005, 47 U.S.C. § 227(b)(1)(C) (the "TCPA") and implementing regulations thereunder. The

Second Circuit has yet to rule on this precise issue.[1] The Court determines that the statute does

not cover this type of faxed invitation and accordingly grants the Defendant's motion to dismiss.

## BACKGROUND

     Defendant is a for-profit limited liability company that conducts market research through

surveys to collect information for its clients. Compl. ¶¶ 11–13, ECF No. 1. Defendant sent

Plaintiff, a professional corporation, two facsimile transmissions (the "Faxes") seeking

---

[1] There is not any district-level caselaw within the Second Circuit on whether faxed invitations to
complete a survey for money are "advertisements," either. *Carolyn M. Machonis, O.T., PLLC v.
Universal Survey Center, Inc.,* No. 18cv10978, 2020 U.S. Dist. LEXIS 31330, at *1 (S.D.N.Y.
Feb. 21, 2020) addressed this issue, but *Machonis* was a Report and Recommendation (R&R)
and the case settled before Judge Nathan ruled on adopting the R&R.

participants for market research studies on or about September 12, 2019 and October 25, 2019,

respectively. Compl. ¶¶ 3, 14. The Faxes are the basis of this action. Plaintiff attached a copy

of the September 12th fax to its complaint as Exhibit A, reproduced here in full:

09-12-2019 7:01        2153674102        2124215502        1/1

 **FocusFORWARD**

Date:  September 11, 2019
From: Jack Thomas
Phone: 215.367.4000, X233
REF: NP619

**ATTENTION: NURSE PRACTITIONERS**

We are currently conducting a market research study amongst Nurse Practitioners and Physician Assistants working in Dermatology offices, regarding the prescription of topical products, and would like to include your opinions. We are particularly interested in speaking with those who work in Group Practices with Corporate Ownership or IDN.

In appreciation of the value of your time, we are offering an honorarium of **$150** for your participation in a 30 minute telephone interview. Interviews are being scheduled between September 11th and 13th. As a medical professional with experience in this area, your point of view would be invaluable to our research.

Please call Jack at 215.367.4000 x233
to answer a few qualifying questions for this research.
Please reference project NP619.

---

The study will be conducted by a 30 minute phone interview.

Compensation for this study is an honorarium in the amount of $150.

When you call, please reference study NP619.

---

If you have received this fax in error, we do apologize for the inconvenience.
Thank you for your consideration of this study!

To be removed from this list fax your number back with this document to 610.964.0345.

960 West Valley Road, Suite 2700
Wayne, PA 19087
215.367.4000 • Fax: 610.964.0345
www.focusfwd.com

2

Likewise, Plaintiff attached a copy of the October 25th fax to its complaint as Exhibit B, reproduced here in full:

10-25-2019 11:25               2153874102               7197292577                    1/1

 **FOCUS**FORWARD

**Date: October 25, 2019**
**From: Jack Thomas**
**Phone: 215.367.4000, X233**
**REF: NPA 736**

### ATTENTION: Nurses & Physician Assistants

We are currently conducting a market research study among Nurses and Physician Assistants who are currently working in a Urology practice of 15 or more practicing physicians, regarding experience treating patients with Non-Muscle Invasive Bladder Cancer, and would like to include your opinions.

In appreciation of the value of your time, we are offering an honorarium of **$150** for your participation in a 45 minute telephone interview, during which internet access will be required on a laptop or desktop computer (No Tablets, No Macs). Interviews are being scheduled at your convenince between October 25th and November 1st. As a medical professional, your point of view would be invaluable to our research.

Please call Jack at 215.367.4000 x233
to answer a few qualifying questions for this research.
Please reference project NPA 736.

---

The study will be conducted through a 45 minute telephone interview.

Compensation for this study is an honorarium in the amount of $150.

When you call, please reference study NPA 736.

---

If you have received this fax in error, we do apologize for the inconvenience.
Thank you for your consideration of this study!

To be removed from this list, please call 866-241-6661
or fax your number back with this document to 610.964.0346.

964 West Valley Road, Suite 2700
Wayne, PA 19087
215.367.4000 • Fax: 610.964.0346
www.focusfwd.com

The Faxes each invite recipients to share their opinions with Defendant in exchange for a $150 "honorarium." Compl. Exs. A, B.  They also ask recipients to "call Jack at [phone number] to answer a few qualifying questions for this research."  *Id.*  The Faxes do not offer to sell anything to recipients, nor do they promote the quality of Defendant's market research services.

The Faxes are said to be harmful to the Plaintiff because receipt of the Faxes deprived Plaintiff of the use of its fax machine while it was receiving the Faxes, wore down its fax machine, and used its paper and toner.[2]  Compl. ¶¶ 5, 41.  Plaintiff alleges that Defendant's other faxes similarly damaged other putative class members.  *Id.*

So, on April 8, 2020, Plaintiff filed this putative class action against Defendant alleging that Defendant violated the TCPA by faxing unsolicited advertisements to Plaintiff and others without their invitation or permission, "and without compliant opt-out language."  Compl. ¶ 6; *see also id.* at ¶ 26.  The TCPA proscribes the faxing of "unsolicited advertisement[s]" absent an established business relationship with the recipient and an appropriate opt-out notice on the fax. 47 U.S.C. § 227(b)(1)(C).  Courts finding TCPA violations may award injunctive relief and statutory damages of $500 per violation, which the court may treble if it finds that the defendant violated the statute willfully or knowingly.  47 U.S.C. § 227(b)(3); *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 94–95 (2d Cir. 2017).  Plaintiff seeks all that relief.  Compl. ¶ 7.

Plaintiff's legal theory is that the Faxes are "advertisements" because they are Defendant's offers "to 'buy' a service from Plaintiff and the putative [c]lass (research study takers), and Defendant then sells the data collected from this service to its clients and uses it to

---

[2] Plaintiff further alleges that the Faxes wasted Plaintiff's valuable time.  Compl. ¶¶ 5, 41.  Time may be money, but the few seconds it takes to read and discard a one-page fax certainly aren't very much money.

make recommendations to its clients." Compl. ¶ 19.  Elsewhere, Plaintiff argues that the Faxes are "advertisements" because they "promote a service to be bought [(answering surveys)] with profit as its aim." Pl.'s Mem. in Opp'n at 6, ECF No. 17; *see also id.* at 9.

On September 11, 2020,[3] Defendant moved to dismiss the complaint under Rule 12(b)(6), arguing that the Faxes are neither facially "advertisements" nor a pretext for later advertisements. Def.'s Mem. in Supp. at 10–14, 15–16, ECF No. 16.[4]

## DISCUSSION

### I.  Applicable Law

#### A.  Standard for Rule 12(b)(6) Motions to Dismiss

On a motion under Rule 12(b)(6), the court accepts all the complaint's factual allegations as true, but "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  To escape dismissal under Rule 12(b)(6), a complaint must contain "factual plausibility" sufficient to allow the court "to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff's factual allegations must "raise a right to relief above the speculative level" to cross "the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

A court may consider both "the allegations on the face of the complaint" and "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v.*

---

[3] Defendant's September 11th filing (ECF No. 15) did not meet filing requirements, but Defendant refiled properly on September 28, 2020 (ECF No. 16).

[4] Defendant also argues that the Faxes are not advertisements sent on behalf of a third party, but if the Faxes are not "advertisements," then they cannot, by definition, be advertisements sent on behalf of a third party.  Because the Court finds that the Faxes are not "advertisements," it does not address the third-party issue.

*Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  The court may also consider "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence."[5]  *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 357 (S.D.N.Y. 2003).

### B.  Statutory & Regulatory Definitions of "Advertisement"

The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).  Whether a fax is an "advertisement" is a question of law for the court.  *See Duran*, 955 F.3d at 282 n.9 ("Interpretations of statutes are pure questions of law . . . .") (quoting *United States v. Williams*, 733 F.3d 448, 452 (2d Cir. 2013)); *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 962 F.3d 882, 890 (6th Cir. 2020) ("Whether a fax constitutes an unsolicited advertisement is a question of law.").

In deciding that question, courts should consider guidance from the FCC, the agency charged with implementing the TCPA.  *See King v. Time Warner Cable Inc.*, 894 F.3d 473, 474 (2d Cir. 2018) ("The FCC has the authority to promulgate regulations implementing the TCPA."); *Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272, 282 (S.D.N.Y. 2013)

---

[5] Defendant indirectly asks the Court to take judicial notice of the industry ethics code to which it subscribes.  Def.'s Mem. in Supp. 6 n.1.  The Court declines to do so for three reasons: (1) public availability is not a sufficient condition triggering judicial notice of a document under Federal Rule of Evidence 201—if it were, virtually everything on the Internet would be appropriate for judicial notice, because it is all "publicly available"; (2) if the Court were to take judicial notice, it would take notice only of the ethics code's existence, not the veracity of its contents (*see Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 412 (S.D.N.Y. 2011)); (3) the ethics code is irrelevant to the question of whether the Faxes constitute "advertisements" (as Defendant says, the code "prohibits market research firms from selling or otherwise providing personal research respondent information to their clients, for solicitation purposes or otherwise." Def.'s Mem. in Supp. 14.  It sheds no light on whether the Faxes advertised the commercial availability or quality of Defendant's services).

("[I]n resolving the matter of whether the faxes at issue constitute advertising it is appropriate for the Court to adopt a reasonable construction of the TCPA promulgated by the FCC . . . .") (alteration in original, citation omitted).  Following *Duran v. La Boom Disco*, courts within the Second Circuit do "not decide what degree of deference, if any, [they] owe to FCC Orders interpreting the TCPA (a question the Supreme Court recently raised, but did not answer[6] . . .). Instead, [they] merely treat the FCC Orders as persuasive authority . . . ." 955 F.3d 279, 285 n.21 (2d Cir. 2020).

47 C.F.R. § 64.1200 contains FCC regulations implementing the TCPA.  § 64.1200(a)(4) proscribes faxing unsolicited advertisements, just as the TCPA does.  § 64.1200(f)(1) uses the TCPA's exact phrasing to define "advertisement," saying "***advertisement*** means any material advertising the commercial availability or quality of any property, goods, or services."  The FCC's Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967, 25973 (May 3, 2006) (the "2006 Rule") elaborate on the definition of "advertisement," construing the TCPA to proscribe faxes that are merely pretext for later advertisements ("Pretext Liability").  The 2006 Rule further states:

> [T]he Commission concludes that any surveys that serve as a pretext to an advertisement are subject to the TCPA's facsimile advertising rules.  The TCPA's definition of 'unsolicited advertisement' applies to any communication that advertises the commercial availability or quality of property, goods or services, even if the message purports to be conducting a survey.

---

[6] *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2055–56 (2019).

71 Fed. Reg. at 25973. The Second Circuit has recognized Pretext Liability, while the Third

Circuit has not. *Compare Boehringer*, 847 F.3d at 95–97, *with Robert W. Mauthe, M.D., P.C. v.*

*Optum Inc.*, 925 F.3d 129, 135 (3d Cir. 2019) ("[W]e have not endorsed and do not now do so

the pretext theory of liability under the TCPA . . . .").

## II. Analysis

"Neither the Second Circuit nor any district courts within the Circuit have specifically

addressed" the issue now before the Court: "whether or when an unsolicited faxed invitation to

participate in a paid survey can constitute an unsolicited 'advertisement' under the TCPA . . . ."

*Carolyn M. Machonis, O.T., PLLC v. Universal Survey Ctr., Inc.*, No. 18cv10978, 2020 U.S.

Dist. LEXIS 31330, at *12 (S.D.N.Y. Feb. 21, 2020). The relevant regulations are not helpful,

because they merely repeat the statutory definition of "advertisement." And the 2006 Rule

discussing pretextual faxes (analyzed below in Part II.B) does not illuminate a path to solving

this question, either. Nonetheless, the TCPA's text gives the Court all it needs to decide this

motion.

Despite its initial circularity, the TCPA's statutory definition provides courts with a

useful standard, keeping them from resorting to expansive dictionary definitions and subjective

interpretations[7] to discern the meaning of the word "advertisement" under the TCPA. Indeed, a

thorough review of caselaw from neighboring circuits reveals that failure to adhere to the

statutory language alters Congress's clear definition of the word "advertisement" into "a

---

[7] "[W]hat fax recipients think about the faxes they get is not legally relevant. The meaning of a
statutory term does not depend on the subjective perception of litigants. That is especially so
when, as here, the [TCPA] provides its own precise definition for the term in question."
*Fischbein v. Olson Rsch. Grp., Inc.*, 959 F.3d 559, 566 (3d Cir. 2020) (Jordan, J., dissenting).

litigant's wishing well, into which, it sometimes seems, one may peer and find nearly anything he wishes." *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 273 (2d Cir. 1979).

Because the Faxes neither advertise "the commercial availability or quality of any property, goods, or services" nor serve as a pretext for future advertisements, they are not "advertisements" under the TCPA.

### A. The Faxes Are Not Facially "Advertisements" Under the TCPA

Here, the Faxes are not facially "unsolicited advertisements" under the TCPA. Accepting as true Plaintiff's allegations that it had no established business relationship with Defendant and did not give Defendant permission to send the Faxes, the Court concludes that the Faxes are unsolicited. But the Court need not accept Plaintiff's legal conclusion that the Faxes constitute "advertisements," and indeed does not accept it, because the statute's text and the weight of authority are against Plaintiff's reasoning.

In support of its position, Plaintiff cites the Third Circuit's recent decision in *Fischbein v. Olson Research Group*, 959 F.3d 559, 562–64 (3d Cir. 2020), which held that faxed invitations to complete surveys for compensation are "advertisements." But *Fischbein*'s reasoning is unpersuasive, because that court reached its holding by creating a new definition of "advertisement" and comparing the faxes at issue to that new definition, rather than the statutory definition. The *Fischbein* definition of "advertisement" may be fairly stated as: "any material offering participation in a commercial transaction." The *Fischbein* court reasoned that because a fax offering to buy services is just as commercial as a fax attempting to sell services, and "a fax seeking a response to a survey is seeking a service," 959 F.3d at 562, "[a]n offer of payment in exchange for participation in a market survey is a commercial transaction, so a fax highlighting the availability of that transaction is an advertisement under the TCPA." *Id.* at 564.

9

But the TCPA does not say that any material advertising the availability of a commercial transaction is an "advertisement." Rather, it clearly states that "advertisements" are "any material advertising the commercial availability or quality of *property, goods, or services*." 47 U.S.C. § 227(a)(5) (emphasis added). The Faxes, like those at issue in *Fischbein*, are requests for information which "do not advertise the 'commercial availability or quality' of anything. Instead, they seek to *obtain* something—the [plaintiff]'s survey responses." 959 F.3d at 565–66 (Jordan, J., dissenting). "Availability" is "the quality or state of being available." *Id.* at 566 (quoting Merriam-Webster.com Dictionary, https://www.merriamwebster.com/dictionary/availability, accessed 14 Apr. 2020). "Available" means "present or ready for immediate use." *Id.* (quoting Merriam-Webster.com Dictionary, https://www.merriamwebster.com/dictionary/available, accessed 14 Apr. 2020). Because the Faxes seek to obtain something, they are "communicating the exact opposite of availability—[they are] stating a need for something not readily available to the sender." *Id.* Moreover, the mere fact that Defendant will profit from survey responses does not mean the Faxes are "transaction-oriented sales mechanisms," and does not transform them into advertisements. *Exclusively Cats Vet. Hosp., P.C. v. M/A/R/C Rsch., L.L.C.*, 444 F. Supp. 3d 775, 781 (E.D. Mich. 2020). Accordingly, the Faxes are not facially "advertisements" under the TCPA.

Plaintiff's citation to *Lyngaas v. J. Reckner Associates, Inc.*, No. 17-cv-12867, 2018 WL 3634309, at *3 (E.D. Mich. July 31, 2018), in support of its argument that the Faxes are "advertisements" because "[t]hey are requests to the public for research participants for pay, with profit as its aim," Pl.'s Mem. in Opp'n at 3, does not persuade the Court otherwise. *Lyngaas* dealt with a fax requesting survey participation in exchange for a "$30 incentive check." 2018 WL 3634309, at *1. *Lyngaas* relied on *Sandusky Wellness Center, LLC v. Medco Health*

10

*Solutions, Inc.*, 788 F.3d 218, 221–22 (6th Cir. 2015), which "define[d] advertising in relevant

part as 'the action of calling . . . a service . . . desired to the attention of the public.'" *Id.* at \*3.

The *Lyngaas* court then equated the fax with a want ad (*id.* at \*3 n.2)—because it called to the

public's attention that the defendant desired and was willing to pay for survey takers' services—

and concluded that the fax was an advertisement. But, like the *Fischbein* court, the *Lyngaas*

court had to redefine the statutory definition of "advertisement" to reach its conclusion. *See*

*Exclusively Cats*, 444 F. Supp. 3d at 784 (criticizing *Lyngaas* for relying "on a dictionary

definition of 'want advertisement[]' which included offers to buy services," because "if the court

were to consider [that] dictionary definition of 'advertisement' by itself, it could encapsulate all

'public notices'"); *Machonis*, 2020 U.S. Dist. LEXIS 31330, at \*17–\*18 (stating that *Lyngaas* "is

not only inconsistent with all of the other relevant authority that this Court has located, but its

reasoning is [also] unpersuasive," because "the [*Lyngaas*] court relied on particularly expansive[]

dictionary definitions of the word 'advertising' . . . that have not been incorporated into the

statute by Congress, nor adopted by the regulating agency.") (citations omitted).  Because it

departs from the statutory definition of "advertisement" to reach its conclusion, *Lyngaas* is

unpersuasive.[8]

　　Plaintiff urges this Court to follow *Fischbein* in rejecting *Exclusively Cats* and *Machonis*

because they improperly relied upon FCC guidance and legislative history regarding unpaid

telephone surveys rather than faxed invitations to participate in paid surveys.  Pl.'s Mem. in

Opp'n at 7–8.  As an initial matter, the Court does not agree that telephone survey requests differ

from faxed survey requests so dramatically that guidance regarding the former is misleading in

---

[8] *Exclusively Cats* carries more weight than *Lyngaas* in any event, as the former is the more
recent decision from the same district court.

analyzing the latter. *Contra Fischbein*, 959 F.3d at 563 (criticizing *Exclusively Cats* and *Machonis* for relying on guidance regarding telephone calls because faxes are more costly due to the use of paper and toner and the recipient's inability to functionally "hang up" to abort receiving the fax). Technology has improved since Congress passed the TCPA in 1991:

> Even on a traditional fax machine, the cost to receive a fax in terms of ink and paper is about 2 cents. . . . And, of course, it is easy to throw a traditional fax, like a piece of junk mail, in the trash. . . . But even that view of junk faxes is outdated as the traditional fax machine goes the way of the dinosaur. Most faxes are now received on computer fax servers that allow the recipient to view faxes on their computer and decide whether or not to print the document, reducing the cost to essentially zero.

*Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, No. 12 C 3233, 2017 U.S. Dist. LEXIS 84696, at *8–*9 (N.D. Ill. June 2, 2017).[9] Accordingly, analogizing faxes to telephone calls appears much more reasonable than Plaintiff and *Fischbein* suggest.

But even if the Court did agree that analogizing faxes to phone calls is inappropriate, that would be insufficient reason to cast *Exclusively Cats* and *Machonis* aside. *Exclusively Cats* rejected *Lyngaas* because of (1) its overly-broad interpretation of "advertisement," (2) its failure to "squarely analyze the unique characteristics of surveys[] in terms of *Sandusky*, the TCPA's statutory and regulatory text, or FCC interpretive documents," and (3) its failure to "identify the central focus of *Sandusky*, statutes, regulations, and FCC guidance on offers to sell, not offers to purchase." 444 F. Supp. 3d at 784–85. Likewise, *Machonis* rejected *Lyngaas* because (1) "the

---

[9] Plaintiff's damages allegations are nearly identical to those in *Allscripts*. *Compare* Compl. at ¶¶ 5, 41 *with* 2017 U.S. Dist. LEXIS 84696, at *7–*8.

court failed to acknowledge either the legislative history or the FCC interpretations of the statute, which expressly or implicitly run counter to the court's conclusion," and (2) it relied on overly-broad definitions of "advertising." 2020 U.S. Dist. LEXIS 31330, at *17–*18. Therefore, although both cases analogized faxes to telephonic survey requests, the guidance they referenced was not necessary to their holdings. The Court feels no recrimination for citing both cases in support of its conclusion that the Faxes are not facially "advertisements."

Notably, both *Exclusively Cats* and *Machonis* point out the sensible conclusion that because the FCC's 2006 Rule says that "any surveys *that serve as a pretext to an advertisement* are subject to the TCPA's facsimile advertising rules," 71 Fed. Reg. at 25973 (emphasis added), the 2006 Rule implies that not all faxed invitations to participate in surveys are "advertisements." 444 F. Supp. 3d at 782 ("However, the FCC purposefully chose not to state that *all* surveys are advertisements under the TCPA and explicitly narrowed its analysis to surveys sitting in for commercial offers. Implicit in the FCC's analysis is the assumption that surveys generally are *not* advertisements under the TCPA."); 2020 U.S. Dist. LEXIS 31330, at *10 (explaining that the 2006 Rule suggests "that unsolicited faxed surveys (like telephone surveys) that do not encourage a purchase or other financial transaction[] are not prohibited *per se*, although they would be unlawful if a pretext for advertising."). Accordingly, the FCC's guidance also supports the Court's conclusion that the Faxes are not facially "advertisements."

Additionally, the cases from the Northern District of Illinois which Plaintiff cites for the proposition that "[a]ll that is needed for a fax to be considered an advertisement is an 'open invitation[] to do business,'" Pl.'s Mem. in Opp'n at 9 (alteration in original), do not actually support the broad interpretation Plaintiff advocates. Rather, those cases imply that to be an advertisement, the "invitation to do business" must ask the recipient to buy something from the

13

sender, or sell something on the sender's behalf, rather than merely invite the recipient to answer survey questions in exchange for modest incentive remuneration.[10]

By contrast, the two Northern District of Illinois cases that actually analyzed whether faxes inviting paid survey/market research participation constitute "advertisements" under the TCPA held that such faxes are not "advertisements" for much the same reason that Judge Jordan gave in his *Fischbein* dissent: they are not advertising the commercial availability of anything. *See Podiatry in Motion, Inc. v. Interviewing Servs. of Am., LLC*, No. 20 C 3159, 2020 WL 5909063, at *1, *3 (N.D. Ill. Oct. 5, 2020) (holding that fax offering $15 Amazon gift card for answering survey questions as part of "large-scale market research survey" is not an advertisement because it "is not making something commercially available; rather, it is asking for the recipient to complete a survey"); *Phillips Randolph Enters., LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 852–53 (N.D. Ill. 2007) (holding that fax offering $200 honorarium for participating in "research discussion" as part of "research study" is not an advertisement because it "does not promote a 'commercially available service,' but a research study").

---

[10] *See Able Home Health, LLC v. Onsite Healthcare, Inc., S.C.*, No. 16-cv-8219, 2017 WL 2152429, at * 2 (N.D. Ill. May 17, 2017) (holding that a fax touting the addition of a new physician to sender's network along with a referral form for patients to identify what services they want "[a]rguably . . . promotes the availability of [defendant's physicians'] services"); *Alpha Tech Pet, Inc. v. Lagasse, LLC*, 205 F. Supp. 3d 970, 973 (N.D. Ill. 2016) (holding that faxes providing prices of certain goods, encouraging customers to look up availability of other products on defendants' website, and encouraging customers to place orders online or by phone were "'invitation[s]' to do business [that are] plausibly . . . advertisement[s]") (citation omitted); *Brodsky v. HumanaDental Ins. Co.*, No. 10 C 3233, 2014 WL 2780089, at *7 (N.D. Ill. June 12, 2014) (holding that faxes inviting recipients to sell sender's dental and vision plans "are open invitations to do business with [defendant], *not merely the promotion of research studies or trials*") (emphasis added).

Further, it does not appear that the Faxes constitute "indiscriminate, open-ended invitation[s]" in any event, *Phillips Randolph*, 526 F. Supp. 2d at 853, because by asking recipients to call "to answer a few qualifying questions for this research," Compl. Exs. A, B, the Faxes "make[] clear [that] individuals interested in participating in the [surveys] must be qualified and are pre-screened." 526 F. Supp. 2d at 853. The Faxes are thus quite different from the generic invitations to buy (or "do business") that are common in advertisements.

In sum, the Court joins the bulk of authority faithful to the statute's text and the FCC's regulations in holding that the Faxes are not facially "advertisements" under the TCPA.

## B. The Faxes Are Not Pretext For Future Advertisements

The Faxes are not advertisements under a Pretext Liability theory, either. First, Plaintiff failed to adequately plead pretext. Plaintiff's complaint did not allege that the Faxes served as pretext for advertisements. Defendant nonetheless argued in its memorandum of law in support of its motion to dismiss that the Faxes were not pretextual. ECF No. 16, at 15–16. Plaintiff responded by saying: "Rather than relying solely on allegations that the Fax[es] [are] a pretext to sell goods or services, Plaintiff directly alleges that the Fax[es] [are] . . . advertisement[s] in that [they] offer to purchase a service with profit as [their] aim." Pl.'s Mem. in Opp'n at 9. The rest of Plaintiff's reply is non-responsive to Defendant's lack-of-pretext argument. This exchange is insufficient to adequately plead a Pretext Liability theory. *See Machonis*, 2020 U.S. Dist. LEXIS 31330, at *20–*21, *25 (concluding that plaintiff failed to adequately plead pretext where complaint lacked "*any* allegation that the Fax was intended to serve as a pretext for [d]efendant's advertising of any commercial products or services (and [plaintiff] conceded in its opposition papers that it is not relying on any such theory of liability)"); *Podiatry in Motion*, 2020 WL 5909063, at *2 ("Because [p]laintiff neither alleges nor argues in its response brief that the fax is

a pretext to advertising, the Court does not address that question here . . . ."); *Phillips Randolph*,

526 F. Supp. 2d at 853 ("Plaintiff's comparison to [pretextual 'free' offerings] is also misguided.

. . . [T]he complaint does not allege that the fax was a pretext to an advertisement.") (citation

omitted).

Second, even if the Court overlooked the pleading defect, Plaintiff would have no basis

for claiming pretext in this case.  Plaintiff does not suggest that Defendant intended to use the

Faxes to advertise anything for sale to Plaintiff, nor to level future targeted advertising at

Plaintiff based on its responses to survey questions.  *See Comprehensive Health Care Sys. of the*

*Palm Beaches, Inc. v. M3 USA Corp.*, 232 F. Supp. 3d 1239, 1242–43 (S.D. Fla. 2017) (denying

motion to dismiss where fax directed recipient to survey weblink which sent recipient to

defendant's privacy policy which stated that defendant may target advertising and marketing at

recipient based on information he would provide in registering for the survey).  Accordingly,

Plaintiff has not stated a claim for relief on a Pretext Liability theory.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion.  Because

amendment would be futile, the complaint is dismissed with prejudice.  The Clerk of Court is

directed to close the motions at ECF numbers 15 and 16, enter judgment, and close this case.

Dated: New York, New York            SO ORDERED
       April __, 2021

                                     _____
                                     HONORABLE PAUL A. CROTTY
                                     United States District Judge